Arkansas Libertarians Eliminating Regressive Taxes (ALERT) c/o Gerhard Langguth 243 White Road Russellville, AR 72802
Ladies and Gentlemen:
You have requested certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of a popular name and ballot title for a proposed constitutional amendment. You have previously submitted proposed popular names and ballot titles for similar measures. This office rejected your proposed popular name and ballot title in Opinion No. 2001-081, due to ambiguities in the text of the proposed measure. After revising the proposed measure, you resubmitted the popular name and ballot title, which this office revised and certified. See Op. Att'y Gen. 2001-103. On May 7, 2001, this office recertified the popular name and ballot title solely to correct my predecessor's errors in drafting the language of the certified ballot title. See Op. Att'y Gen. 2001-103A. You have since made additional changes to your proposed measure and have submitted a revised popular name and ballot title for my certification.
Your proposed popular name and ballot title are as follows:
 Popular Name Amendment Eliminating Taxes on Food Ballot Title AN AMENDMENT TO THE ARKANSAS CONSTITUTION, ABOLISHING AND PROHIBITING THE TAXATION OF FOOD; DEFINING "FOOD" TO MEAN" ANY FOOD OR FOOD PRODUCT FOR HOME CONSUMPTION THAT WAS ELIGIBLE FOR PURCHASE WITH FEDERAL FOOD STAMPS ON JULY 1, 2002. SPECIFICALLY EXCLUDING ALCOHOLIC BEVERAGES, TOBACCO, HOT FOODS OR HOT FOOD PRODUCTS READY FOR IMMEDIATE CONSUMPTION, AND SYRUPS, POWDERS OR OTHER BASES USED TO MAKE SOFT DRINKS.
 PROVIDING THAT ALL NEW, ADDITIONAL, OR INCREASED TAXES NOT EXEMPTING FOOD SHALL BE VOID.; PROVIDING THAT TAXES ON FOOD ESTABLISHED BEFORE THE EFFECTIVE DATE OF THIS AMENDMENT SHALL EXPIRE ON JULY 4TH 2003, EXCEPT THAT THOSE REQUIRED TO SECURE BONDS OR OTHER CONTRACTUAL OBLIGATIONS MAY BE EXTENDED TO SATISFY THOSE OBLIGATIONS; AND REQUIRING THAT ALL REVENUE FROM SUCH TAXES REGARDLESS OF SOURCE SHALL BE USED EXCLUSIVELY TO FULFILL AND TERMINATE SUCH CONTRACTS AT THE EARLIEST POSSIBLE DATE.
 THIS AMENDMENT ABOLISHES ALL FORMS AND TYPES OF TAXES ON FOOD (AS DEFINED HEREIN) AND WILL RESULT IN A LOSS OF REVENUE FOR STATE, COUNTY AND CITY GOVERNMENTS, AS WELL AS SCHOOL DISTRICTS, WITH THE RESULT THAT A REDUCTION IN THE SERVICES PROVIDED BY THOSE ENTITIES AND/OR AN INCREASE IN OTHER TAXES MAY BE REQUIRED.
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment or act. See Arkansas Women's PoliticalCaucus v. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185
(1958); Becker v. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555
(1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285,884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34
(1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v.Hall, supra; and Walton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see
A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. §7-5-522's five minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian CivicAction Committee v. McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960). Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed ballot title due to ambiguities in the text of your proposed measure. A number of additions or changes to your ballot title are, in my view, necessary in order to more fully and correctly summarize your proposal. I cannot at this time fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of these ambiguities. I am therefore unable to substitute and certify a more suitable and correct ballot title pursuant to A.C.A. § 7-9-107(b).
I refer to the following ambiguities:
 • The proposed measure fails to address the intended power of the General Assembly. This failure creates a significant ambiguity, because the Arkansas Constitution is deemed to be a limitation of power rather than a grant of power. Its provisions list what government cannot do, and in the absence of such limiting language, the state government may act. Smart v. Gates, 234 Ark. 858, 860 (1961); Baratti v. Koser Gin Co., 206 Ark. 813, 817 (1944); St. Louis, I.M.S. Rwy Co. v. State, 99 Ark. 1, 14 (1911); State v. Ashley, 1 Ark. 513, 538 (1839). The issue of the intended power of the General Assembly becomes important with regard to the proposed measure because (as discussed more explicitly below) various key terms in the proposed measure are not sufficiently defined. Thus, the failure of the proposed measure to mention the General Assembly raises a question as to whether the measure intends that the General Assembly define the terms, or whether the proposed measure is intended to be self-executing. If the measure is intended to be self-executing, the failure to sufficiently define key terms will be fatal to the measure's ability to be fairly summarized in a ballot title.
 • The proposed measure prohibits the "taxation of food" and makes void all "new, additional or increased taxes not exempting food." The quoted phrases are ambiguous in that they do not sufficiently indicate precisely what types of taxes on food are to be prohibited. See Kurrus v. Priest, 342 Ark. 434, 29 S.W.3d 669(2000). For example, it is unclear whether the measure is intended to prohibit both state and local taxes, and whether it is intended to encompass only gross receipts taxes, or also, for example, property taxes on food inventories of wholesale and retail establishments.
 • The second paragraph of the proposed measure defines the term "food" to mean "any food or food product for home consumption that was eligible for purchase with federal food stamps on July 1, 2002." This definition is ambiguous for various reasons. First, it defines the term "food" by using the term "food," with the obvious result of begging the question of what constitutes "food." The use of the term "food" to define the term "food" also precludes the possibility of any basis for distinguishing between "food" and "food products." Moreover, consultation with the federal law that is referenced in this definition does not clarify the meaning of the term "food," because that federal law defines the term using identical language, without further defining it. See 7 U.S.C. § 2012(g). Regarding the definition's reference to the federal food stamp law, I note that the question of whether such a reference is sufficient to define the term "food" is a question upon which reasonable minds could differ. See Ward v. Priest, 02-954, (Ark. 10-24-2002) (two justices finding a reference to federal law sufficient, and two justices finding such a reference insufficient). For this reason, the use of such a reference in the proposed measure creates difficulty in fashioning an acceptable ballot title.
 • The second paragraph of your proposed measure excludes certain items from the provisions of the measure. That is, it identifies certain items on which taxation will not be prohibited by the measure. Among these items are" hot foods or hot food products ready for immediate consumption." This phrase may have been intended to have the effect of excluding from the tax prohibition items that are taxable under A.C.A. §§ 26-75-601 et seq. and -701 et seq. (commonly referred to as the" Hamburger Tax" or the "Advertising and Promotion Tax"). It is unclear whether the measure would actually have that effect, because the language of this exemption is not co-extensive with the language of those state laws. Moreover, it is unclear precisely what food items would properly be classified as "hot foods or hot food products ready for immediate consumption." For example, this phrase may be intended to permit taxation on items purchased at a restaurant or at the drive-through window of a fast food restaurant, but it could also readily be construed to permit taxation on a jar of jalapeño peppers purchased at a grocery store, or to exclude from the exemption (that is, to prohibit taxation on) a cold salad purchased at a restaurant or a drive-through window. It is also unclear what constitutes "immediate consumption," thus raising the question of whether an item that is purchased at a restaurant, but taken home in a carry-out box for later consumption, is intended to be excluded from the taxation that is imposed on the portion of the meal that was consumed "immediately" in the restaurant. Moreover, it is unclear what distinguishes "hot food" from "hot food products." Again, consultation with the federal law from which this definition was apparently derived is not enlightening, because that federal law uses identical language, without further definition of its terms.
 • Also exempted from the provisions of the proposed measure are "syrups, powders or other bases used to make soft drinks." This phrase may have been intended to have the effect of excluding from the tax prohibition items that are taxable under the Arkansas Soft Drink Tax (A.C.A. § 26-57-901 et seq.). However, it is unclear whether this phrase, without a reference to bottled soft drinks (or some similar reference to the finished soft drink product), would actually have that effect, because finished soft drink products are taxable under the Arkansas Soft Drink Tax. The absence of a reference to finished soft drink products raises the question of whether the intent is to include finished soft drink products in the items on which taxes will be prohibited. Whether the intent of the measure is to permit or prohibit taxes on finished soft drink products (and indeed, even if finished soft drink products were explicitly referred to in the measure), it is nevertheless unclear what the impact of the measure will be upon the Arkansas Soft Drink Tax (A.C.A. § 26-57-901 et seq.), and whether taxes on both wholesale and retail sales of soft drinks (or neither) will be affected.
 • Also among the items that are exempted from the provisions of the proposed measure are "alcoholic beverages" and" tobacco." These terms are not defined, and could be subject to a variety of interpretations. Moreover, as mentioned previously, it is unclear whether the measure intends the General Assembly to define these terms.
 • The third paragraph of the proposed measure provides that taxes on food established before the effective date of the proposed amendment are to expire on a stated date, except that those required to secure certain obligations may be extended, "provided that all revenue from such taxes regardless of the source shall be used exclusively to fulfill and terminate such contracts at the earliest possible date." It is unclear whether this provision is intended to require that tax moneys that were not pledged for the satisfaction of such contractual obligations be used to accelerate that satisfaction, even though these tax moneys may have been levied for another purpose. If this is the intent, the measure should clarify its intended impact on Article 16, § 11 of the Arkansas Constitution, which prohibits the use of tax moneys for any purpose other than the purpose for which the tax was levied.
 • The proposed measure designates July 4th, 2005 as the expiration date for taxes on food that were established before the effective date of the proposed amendment. However, the corresponding provision in the ballot title states that such taxes are to expire on July 4th 2003. This inconsistency between the text of the proposed measure and the ballot title creates an ambiguity as to the intended date.
Each of the above-described ambiguities must be addressed before an intelligible, honest, and impartial ballot title can be crafted.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107
and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finnv. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court has confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v. Priest,341 Ark. 813, 20 S.W.3d 376 (2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id.
Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. §7-9-107(c). You may, after clarification of the matters discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. This office will be pleased to perform its statutory duties in this regard in a timely manner after resubmission.
Sincerely,
J. LEON JOHNSON Attorney General
JLJ:JD/cyh